

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-25-00569-CV

**IN THE INTEREST OF J.A.V.** and J.B.V.

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2022-PA-00633
Honorable Raul Perales, Judge Presiding

Opinion by:     Adrian A. Spears II, Justice

Sitting:          Rebeca C. Martinez, Chief Justice
                  Lori I. Valenzuela, Justice
                  Adrian A. Spears II, Justice

Delivered and Filed: July 8, 2026

AFFIRMED AS MODIFIED

Lauren D. appeals the trial court's order terminating her parental rights. She brings four issues on appeal: (1) whether the trial court erred in failing to include findings pursuant to section 161.001(f) and (g) of the Texas Family Code; (2) whether the evidence is factually sufficient to support findings pursuant to subsections (f) and (g); (3) whether the trial court terminated the parent-child relationship based on a ground not pled by the Department; and (4) whether the evidence is legally and factually sufficient to support the trial court's finding pursuant to section 161.001(b)(1)(D). For the reasons stated below, we modify the trial court's order terminating Lauren D.'s parental rights to include the trial court's supplemental findings pursuant to section 161.001(f) and (g) of the Texas Family Code. As modified, we affirm.

**BACKGROUND**

On April 21, 2022, the Texas Department of Family and Protective Services filed an Original Petition for Protection of a Child, for Conservatorship, and for Termination in a Suit Affecting the Parent-Child Relationship, seeking termination of Lauren D.'s parental rights to her then almost three-year-old son J.A.V. and to her one-year-old daughter J.B.V. The Department sought termination of Lauren D.'s parental rights based on subsections (D), (E), (K), (N), (O), and (P). The Department also sought termination of the father's parental rights. The parties entered into a mediated settlement agreement in which they agreed the Department would be designated permanent managing conservator and the parents would be designated possessory conservators with monthly supervised visitation and weekly telephonic or virtual visitation. On September 19, 2023, the trial court signed the final order in a suit-affecting the parent-child relationship and, noting the mediated settlement agreement between the parties, appointed the Department as permanent managing conservator and the parents as possessory conservators. The trial court also ordered the parents to pay child support.

On December 11, 2024, the Department filed an Original Petition to Modify Prior Order in Suit Affecting the Parent-Child Relationship and again sought termination of the parents' rights. On January 7, 2025, the Department filed a First Amended Petition to Modify Prior Order in SAPCR, seeking termination of Laura D.'s parental rights based on subsections (D), (E), and (O). The bench trial commenced on August 19, 2025. At the time of trial, J.A.V. was six years-old and J.R.V. was three years-old.

Gypsy Popplewell, who had been the conservatorship caseworker since June 2025, testified that the Department became involved with the family based on unsanitary living conditions, Lauren D.'s mental health concerns, and illegal drug use, in particular methamphetamine, by both

parents. According to Popplewell, because there had been "a previous lengthy history of domestic violence between" Lauren D. and the father, they were ordered to complete domestic violence classes. Popplewell testified that both Lauren D. and the father had been aggressors in the relationship and that after completing domestic violence classes, Lauren D. continued her relationship with the father. Popplewell testified that given the history of domestic violence, the Department was concerned about Lauren D. and the father continuing their relationship. Popplewell testified that Lauren D. and the father had been living in a motel room and that they were having trouble finding housing because of the father's criminal history and previous convictions. Popplewell testified Lauren D. said she had a job but had not provided any pay stubs as proof of income. According to Popplewell, neither parent had visited the children since August 2024, which was over a year. Popplewell testified that the visits were stopped based on the recommendation of J.A.V.'s therapist. When asked why the therapist had made that recommendation, Popplewell testified, "It was because Lauren—after every single parent-child visit, [J.A.V.] would have increased intense behaviors. A lot of it was because Lauren would state that [the father] was hitting her and abusing her after each visit."

Popplewell testified at the previous court date before the bench trial, the trial court had ordered follicle testing on both parents, and Lauren D. had then tested positive for illegal substances. According to Popplewell, she discussed the positive result with Lauren D., who replied that the positive result was incorrect because she did not use that drug.

Popplewell testified that Lauren D. and the father had recently had another child who was removed from their care and put into conservatorship care because of Lauren D.'s substance abuse. Popplewell testified both parents have an open case with respect to that child. According to Popplewell, the parents have not changed their behaviors and there are "still concerns with

substance abuse." Popplewell testified that the parents had "not completed all their services, and this case has been open for years." Popplewell testified that Lauren D. had not shown she was addressing her mental health issues.

Popplewell testified that six-year-old J.A.V. had been placed in a residential treatment center and three-year-old J.B.V. had been placed with a foster family. Before these placements, they had been placed with their grandmother. However, the grandmother was no longer a placement because J.A.V. had made an outcry that the grandmother "was abusing him and that she told the [Department's] workers that he was the devil." Popplewell explained that the Department then removed the children from the grandmother's care. Popplewell testified that after J.A.V. completes treatment at the residential treatment center, he will be placed in the same foster family as his sister J.B.V. According to Popplewell, the foster parents visit J.A.V. weekly at the residential treatment center and would like to adopt both children. The foster parents attend all the meetings J.A.V. has with his therapist and psychiatric medical providers. Popplewell testified the foster parents "just seem to really want to have [J.A.V.] in their care. They care about him a lot."

Popplewell testified that J.A.V. has special needs. He has ADHD, a mood disorder, anxiety, and was diagnosed with bipolar disorder. He is taking dexmethylphenidate extended release for ADHD, clonidine for mood and anxiety, aripiprazole for mood, and Trazodone for sleep. His current placement is making sure his needs are being met with regard to those issues. J.A.V. has behavioral therapy, psychiatric services, individual therapy, and case management. In contrast, J.B.V. is on medication for her allergies and needs a basic level of care. Popplewell testified that both children are meeting developmental milestones. J.B.V. is in daycare. J.A.V. is in kindergarten and has a 504 plan and accommodations. Popplewell testified that since she has been the caseworker, neither parent has been involved in the care or treatment of either child. She testified

that the substantial change in circumstances that prompted the Department to file the modification suit is finding permanency for the children.

Popplewell testified she had talked to the parents about the services they were supposed to complete, including individual counseling, but had not sent out referrals to a counselor because the parents had been unsuccessfully discharged from individual counseling. Popplewell explained that when she became the primary caseworker, the required referrals had already been sent out by the previous caseworker and were still in place. Popplewell met with the parents in June, and their newborn baby was removed in July. According to Popplewell, when the baby was removed from their care in July, the caseworker for the baby's case was setting up new services for the parents.

Popplewell testified that the parents had had over a year to complete their services. They did not provide proof of stable housing or proof of employment. Lauren D. had tested positive for illegal drugs, and the father had been incarcerated for assaulting Lauren D.

Janel Rodriguez testified she is the legal worker for the case relating to Lauren D.'s and the father's baby, P.V. She testified her case was opened because Lauren D. tested positive for methamphetamines on a hair follicle test. Rodriguez testified that P.V. was born on June 8, 2025, and Lauren D.'s hair follicle sample was taken on June 30th. According to Rodriguez, Lauren D. provided no prescriptions that would have caused a positive result, and P.V. was removed on July 11th. When asked if the children would be in danger if they were returned to the parents' care, Rodriguez testified that "it would be a danger for the children to return" due to "concerns for stability, ongoing substance abuse," and the parents not addressing the domestic violence in their relationship. Rodriguez testified that the father was "currently in domestic violence services" but that Lauren D. needed to complete her services. Rodriguez emphasized the age range of the

children, J.A.V.'s behaviors, and P.V. being a newborn who was "having some difficulties potentially from [drug] withdraw[al]" as factors preventing the return of the children.

Lauren D. testified that since August 2023, she has worked thirty-five to forty hours per week at the Rush Fun Park in Universal City and claimed to have given the Department proof of her employment. She testified that the last time she saw J.A.V. was a year before trial, which she blamed on her son's therapist. She testified that she had completed her parenting and domestic violence classes in April 2024, but admitted to never finishing individual counseling. The last time she attended individual therapy was December 2024. She blamed her caseworker for never sending another referral, claiming she would have gone if she had gotten another referral, but then admitted she had been discharged from her original counseling referral. When asked why she was discharged from individual counseling, Lauren D. replied, "I believe that I missed two appointments probably because of my job."

Lauren D. testified that P.V. was born on June 8, 2025. Lauren D. stated that she was sent for a follicle test on June 29th and P.V. was removed days later. Lauren D. admitted that she had a positive test in the beginning of 2024, but stated that she had tested negative since September 2024. When asked why she got back together with the father, Lauren D. testified, "Because he's clearly working on himself and I am working on myself, and our children deserve both parents." Lauren D. was asked whether it was "correct that there was an incident of domestic violence between [her] and the father about a year ago." Lauren D. replied, "I am not a hundred—about a year ago? Possibly." Lauren D. was then asked why she stayed with the father after the incident. Lauren D. testified, "I did not stay with him after. When he got out of jail, we got—we talked about it, and we got back together." Lauren D. claimed that the father "had gotten help in jail and at Haven for Hope, and he's been doing great since he got out of jail."

When asked what her plan was to gain stable housing, Lauren D. stated, "I am currently looking into trying to get an apartment. But it's—it's kind of hard because they want both adults on the lease, and [the father] has two convictions." Lauren D. admitted that even though she had had since April 2022 to work the services on her family service plan, she still did not have stable housing and had been living in a motel for the previous ten months. Lauren D. was then asked if the children were returned to her care, she believed a motel room was suitable for a family of her size. Lauren D. replied, "I can always get a bigger room." She was then asked whether she believed such an environment would be in the best interest of J.A.V. with his special needs. Lauren testified, "Yes. We can make it work."

Lauren D. testified that she did not have other family members that could be studied as placements for the children. She testified that the last time she paid any child support was in December 2023 when the children were placed with her mother.

During his testimony, the father was asked when he was incarcerated in prison. He replied, "There was [sic] several times." During the pendency of this case, the father testified he was released from prison on August 3, 2024. He testified he knew he needed to do domestic violence and parenting classes. According to the father, he had set up those classes when he went to jail for a probation violation. He testified that he restarted his domestic violence and parenting classes in May 2025. He admitted that since April 2022, he knew that he was required to complete drug treatment and domestic violence classes but had not completed any of those services at the time of trial. When asked if he was aware Lauren D. was using illegal drugs, the father testified that Lauren D. had not used drugs since she discovered she was pregnant with P.V.

After hearing all the evidence, on September 10, 2025, the trial court signed its Order Modifying Final Order in a SAPCR, which terminated the parental rights of both Lauren D. and

the father. Lauren D.'s parental rights were terminated on subsection (D) and (E) grounds. Lauren D. then filed a notice of appeal.[1]

**DID THE TRIAL COURT ERR IN TERMINATING PARENTAL RIGHTS ON GROUNDS NOT PLED?**

Lauren D. argues that the trial court erred in terminating her parental rights based on subsection (E), because the Department did not plead those grounds. *See In re S.M.R.*, 434 S.W.3d 576, 581 (Tex. 2014) (stating that an order terminating parental rights "can only be upheld on a ground that was both pleaded by the party seeking termination and found by the trier of fact"). However, the clerk's record reflects that the Department in this case always sought termination based on subsection (E) grounds, from the time it filed its original petition to the time it filed a first amended petition to modify the prior order in a suit affecting the parent-child relationship. The Department's live pleading at the time of trial clearly reflects that it sought termination on the basis of subsection (E). Subsection (E) grounds were therefore properly pled by the Department.

We note that Lauren D. cites to the pages of the reporter's record where the Department orally requested termination on subsection (D) and (N) grounds and failed to mention subsection (E) grounds. To the extent Lauren D. is arguing that the Department abandoned subsection (E) grounds, abandonment of a pleading by a party is a question of law that we review de novo. *See In re J.M.*, 352 S.W.3d 824, 826 (Tex. App.—San Antonio 2011, no pet.). One need not formally amend its pleadings to abandon a claim. *Id*. For example, a "stipulation may be sufficient to demonstrate abandonment of a pleading." *Id*. But, abandonment requires more than merely failing to orally mention a ground at trial; it requires an affirmative act showing intent to relinquish. *See Evans Res., L.P. v. Diamondback E&P, LLC*, 725 S.W.3d 718, 740 (Tex. App.—Eastland 2025, pet. filed) (holding that counsel's affirmative representation in court that his clients were not

---

[1]The father did not file a notice of appeal.

submitting a damages question relating to their pooling claims and that they only wished to discuss the defendant's failure to obtain consent in connection with their pleaded fraud claim "constitute[d] a stipulation that limited the issues to be tried or considered by the jury"). Here, the reporter's record reflects that during closing argument, the Department was discussing the parents' failure to complete services, Lauren D.'s failure to complete drug treatment, her positive drug tests, Lauren D. remaining with the father despite the domestic violence, and their infant's removal due to continued concerns for drug use and instability. The Department then argued, "Based on this, Your Honor, I am asking for termination of parental rights of both of the parents under D and N grounds and for the Department to continue as permanent managing conservator while we work toward the goal of adoption by the current placement." Nothing in this statement indicates an intent by the Department to abandon its request for termination pursuant to subsection (E). Thus, we hold the trial court did not, as argued by Lauren D., terminate parental rights based on grounds not pled or requested.

**TRIAL COURT'S FINDINGS UNDER SECTION 161.001(F) AND (G)**

### A. Applicability of Subsections (F) and (G) to a Petition to Modify Filed After the Effective Date of the Act

In her brief, Laura D. complains that the trial court failed to make required findings pursuant to section 161.001(f) and (g). *See* TEX. FAM. CODE § 161.001(f), (g). In response, the Department argues that subsections (f) and (g) do not apply to this case.

In 2023, the Legislature amended section 161.001 to require the trial court to make findings concerning the reasonable efforts the Department made to return the child to the parent. *See* Act of May 25, 2023, 88th Leg., R.S., ch. 675, §§ 1, 7-8, 2023 Tex. Sess. Law Serv. 1646, 1646, 147 (codified at TEX. FAM. CODE § 161.001(f), (g)). Subsection (f) provides the following:

> In a suit for termination of the parent-child relationship filed by the Department of Family and Protective Services, the court may not order termination of the parent-child relationship under Subsection (b)(1) unless the court finds by clear and convincing evidence and describes in writing with specificity in a separate order that: (1) the department made reasonable efforts to return the child to the parent before commencement of a trial on the merits and despite those reasonable efforts, a continuing danger remains in the home that prevents the return of the child to the parent; or (2) reasonable efforts to return the child to the parent, including the requirement for the department to provide a family service plan to the parent, have been waived under Section 262.2015.

TEX. FAM. CODE § 161.001(f). Subsection (g) provides the following:

> In a suit for termination of the parent-child relationship filed by the Department of Family and Protective Services in which the department made reasonable efforts to return the child to the child's home but a continuing danger in the home prevented the child's return, the court shall include in a separate section of its order written findings describing with specificity the reasonable efforts the department made to return the child to the child's home.

TEX. FAM. CODE § 161.001(g).

Here, the clerk's record reflects that on April 21, 2022, the Texas Department of Family and Protective Services filed an Original Petition for Protection of a Child, for Conservatorship, and for Termination in a Suit Affecting the Parent-Child Relationship, seeking termination of Lauren D.'s parental rights to her son J.A.V. and to her daughter J.B.V. On September 8, 2023, the parties entered into a mediated settlement agreement in which the Department was named permanent managing conservator, and the parents were named possessory conservators with monthly supervised visitation and weekly telephonic or virtual visitation. On September 19, 2023, the trial court signed a Final Order in Suit Affecting the Parent-Child Relationship, which noted the mediated settlement agreement between the parties and appointed the Department as permanent managing conservator and the parents as possessory conservators.

On December 11, 2024, the Department filed an Original Petition to Modify Prior Order in a SAPCR and again sought termination of Laura D.'s parental rights. On January 7, 2025, the

Department filed a First Amended Petition to Modify Prior Order in SAPCR, seeking termination of Laura D.'s parental rights pursuant to Section 161.001(b)(1)(D), (E), and (O). After a bench trial, on September 10, 2025, the trial court signed its order terminating Lauren D.'s parental rights to her children pursuant to subsections (D) and (E). The clerk's record reflects that the trial court did not make any findings pursuant to subsections (f) and (g).

The Department argues that subsections (f) and (g) do not apply here because the Department's Original Petition for Protection of a Child, for Conservatorship, and for Termination in a Suit Affecting the Parent-Child Relationship was filed on April 21, 2022, which was before the effective date of the newly-enacted subsections (f) and (g). According to the Department, although the petition for modification was filed after the effective date of the newly-enacted subsections (f) and (g), "the modification is just a continuation of the original suit, not a separate action in and of itself—indeed, it uses the same cause number as the original suit." The Department cites no support for this assertion.

In amending section 161.001 by adding subsections (f) and (g), the Legislature stated that "[t]he changes in law made by this Act *apply to a suit affecting the parent-child relationship* filed on or after the effective date of this Act." Act of May 25, 2023, 88th Leg., R.S., ch. 675, §§ 1, 7-8, 2023 Tex. Sess. Law Serv. 1646, 1646, 147 (codified at TEX. FAM. CODE § 161.001(f), (g)) (emphasis added). "A *suit* filed before the effective date of this Act is governed by the law in effect on the date the suit is filed, and the former law is continued in effect for that purpose." *Id*. (emphasis added). "This Act takes effect September 1, 2023." *Id*. Thus, the issue is whether a petition to modify a final order in a suit affecting the parent-child relationship is "a suit affecting the parent-child relationship."

In our order of February 12, 2026, we concluded that because the petition to modify is a suit affecting the parent-child relationship and was filed after the effective date of the Act, subsection (f) and (g) applied. In doing so, we explained that statutory construction is a question of law that we review de novo and that examining the statute's text is the best indication of legislative intent. *City of Round Rock v. Rodriguez*, 399 S.W.3d 130, 133 (Tex. 2013). Further, we explained that in ascertaining the meaning of a term, we should "look primarily to how that term is used throughout the statute as a whole." *In re Y.K.*, 722 S.W.3d 273, 278 (Tex. App.—Fort Worth 2025, no pet.) (quoting *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002)).

We noted that section 101.032 of the Texas Family Code defines "[s]uit affecting the parent-child relationship" as "*a suit filed as provided by this title* [i.e., Title 5] in which the appointment of a managing conservator or a possessory conservator, access to or support of a child, or establishment or *termination of the parent-child relationship is requested*." TEX. FAM. CODE § 101.032(a) (emphasis added). In looking at the plain language of section 101.032, we concluded in our February 12, 2026 order that the Department's Original Petition to Modify Prior Order is a "suit affecting the parent-child relationship." *See Chalu v. Shamala*, 125 S.W.3d 737, 738 (Tex. App.—Houston [1st Dist.] 2003, no pet.) ("A motion to modify the parent-child relationship is a suit affecting the parent-child relationship (SAPCR)."). Thus, because the petition to modify was filed after the effective date of the Act in question, we determined that subsections (f) and (g) applied and that the trial court erred in failing to include the required findings. *See D.F. v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-25-00738-CV, 2026 WL 59729, at *1 (Tex. App.—Austin Jan. 8, 2026, order) (holding that because the trial court "ordered the termination of the parent-child relationship under subsection (b)(1)," "its order must comport with subsections (f) and (g)"). Therefore, we abated the cause and remanded it to the trial court so that it could enter

the required findings with sufficient specificity concerning the Department's reasonable efforts to return the children to the home. *See id.* (abating the cause, remanding it to the trial court for it "to enter the required findings with sufficient specificity concerning the Department's reasonable efforts to return the children to their home," and ordering a supplemental clerk's record to be filed containing the trial court's findings); *see also* TEX. R. APP. P. 44.4 (prohibiting the court of appeals from affirming or reversing a trial court's judgment if the "trial court's erroneous action or failure or refusal to act prevents the proper presentation of a case" on appeal and "the trial court can correct its action or failure to act"). After the supplemental clerk's record containing the trial court's findings under subsections (f) and (g) were filed, we reinstated this appeal and set it for submission.

The supplemental clerk's record reflects that the trial court made the following findings pursuant to subsections (f) and (g):

1. The court finds by clear and convincing evidence that the Department made reasonable efforts to return the children to the parents before trial commenced. Specifically, the Department made the following efforts:

   a. Engaging the parents in a safety plan that included progressive steps for the parents to gain parenting skills, not use illicit substances, not allow the children to be around others that use drugs or neglect the children, and engage in therapy.

2. The court finds by clear and convincing evidence that a continuing danger remains in the home that prevents the return of the children to the parents, specifically:

   a. Neither parent completed the safety plan nor addressed [the] reasons for removal including domestic violence and drug use.

   b. Father was minimally engaged in part due to frequent incarcerations.

   c. Mother did not complete therapy necessary to address the reasons for removal. She was unsuccessfully discharged and took no effort to reengage despite being given the opportunity to do so.

d.  Mother continued to abuse illicit substances.

e.  Mother concealed a pregnancy during this legal case and had a subsequent child removed due to illicit drug use.

f.  Both parents continue to exhibit lack of stability and an inability to care for children of which one has a need for an intense level of care.

g.  Father has been incarcerated a substantial percentage of the ongoing legal case.

h.  Mother and Father (when not incarcerated) have been living in hotels or motels since at least June 2025.

### B. *Factual Sufficiency of Trial Court's Subsection (F) and (G) Findings*

Lauren D. argues that the evidence is factually insufficient to support the trial court's finding of that the Department made reasonable efforts to return the children to her. Specifically, she contends that the evidence "consisted of hearsay statements of a prior caseworker and hearsay statements of a child therapist." However, unobjected-to hearsay testimony retains probative value and can support findings by the trial court. *See In re R.H.W.*, 542 S.W.3d 724, 734 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ("Unobjected-to hearsay is, as a matter of law, probative evidence."); *L.R. v. Tex. Dep't of Fam. & Prot. Servs.*, No. 03-18-00125-CV, 2018 WL 3059959, at *4 (Tex. App.—Austin June 21, 2018, no pet.) (rejecting appellant's argument that the evidence was insufficient because "the testimony at trial 'was comprised wholly of speculation and hearsay,'" because the record reflected that the testimony was not objected to on hearsay grounds and unobjected-to "hearsay evidence may support the trial court's determinations"). Texas Rule of Evidence 802 provides that "[i]nadmissible hearsay admitted without objection shall not be denied probative value merely because it is hearsay." TEX. R. EVID. 802.

In reviewing the evidence under the appropriate factual sufficiency standard of review, we hold that the evidence is factually sufficient to support the trial court's finding under subsections

(f) and (g). There was testimony by the caseworker of a family safety plan that included progressive steps for the parents to gain parenting skills, not use illicit substances, not allow the children to be around others that use drugs or neglect the children, and engage in therapy. *See In re M.N.M.*, 708 S.W.3d 321, 329 (Tex. App.—Eastland 2025, pet. denied) ("The Department's implementation of a family service plan is generally considered a reasonable effort to return the child to the parent."). Popplewell testified that she was the custodian of records for the Department's records in this case and had reviewed the case file. She testified that she had also discussed the case with the previous caseworker. She testified that Lauren D. had been given a service plan in 2022 and had completed some services but had been discharged from individual therapy for missing too many appointments. Lauren D.'s discharge from therapy occurred about a year before trial, and there was testimony that she never made any effort to reengage. There was testimony that the previous caseworker had sent out referrals, which were still in place when Popplewell became the caseworker and were still in place at the time of trial. Lauren D. testified that she did not know about the referrals, but the trial court, as factfinder, was free to disregard her testimony. *See In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006) (explaining that as "the sole arbiter when assessing the credibility and demeanor of the witnesses," the factfinder is "free to disregard" witness testimony that it finds not credible).

Additionally, there was evidence that neither parent completed the safety plan nor addressed the reason for the children's removal. There was evidence of Lauren D.'s continued illegal drug use and of continued domestic violence between Lauren D. and the father, which resulted in the father's incarceration. There was evidence that despite completing domestic violence classes and despite the father being incarcerated for the assault of Lauren D., Lauren D. still decided to continue her relationship with the father and was in a relationship with the father

at the time of trial. There was evidence that Lauren D. gave birth to another child during this legal case, who was removed from Lauren D.'s care because of her illegal drug use. There was evidence that Lauren D. lacked stability and was living in a hotel or motel for the previous ten months before trial. We emphasize that the trial court, as factfinder, was free to disregard Lauren D.'s testimony as not credible. *See id.*

Having concluded that there is factually sufficient evidence to support the trial court's supplemental findings under subsections (f) and (g), we modify the trial court's order of termination to include those findings.

### SUFFICIENCY OF SUBSECTION (D) GROUNDS

Finally, Lauren D. attacks the legal and factual sufficiency of the evidence to support termination of parental rights on subsection (D) grounds. The trial court in this case terminated Lauren D.'s parental rights on two endangerment grounds: subsections (D) and (E). Lauren D., however, has not attacked the sufficiency of the evidence to support the trial court's termination of her parental rights on subsection (E) grounds. "To affirm a termination judgment on appeal, a court need uphold only one termination ground—in addition to upholding a challenged best interest finding—even if the trial court based the termination on more than one ground." *In re N.G.*, 577 S.W.3d 230, 232 (Tex. 2019) (per curiam). Thus, because Lauren D. has not challenged the sufficiency of the evidence of both predicate grounds found by the trial court, we can uphold the trial court's judgment based on the trial court's subsection (E) finding, along with its unchallenged best-interest finding. *See id.* Thus, the question becomes whether we need to address Lauren D.'s sufficiency issue regarding the trial court's subsection (D) finding.

We note that the Texas Supreme Court in *In re N.G.*, 577 S.W.3d 230, 234 (Tex. 2019), "established the principle that appellate courts must review findings under subsections (D) and

(E), when challenged, even where such review would ordinarily be vitiated by mootness or similar jurisprudential principles." *In re M.N.R.*, 719 S.W.3d 647, 654 (Tex. App.—San Antonio 2025, pet. denied) (discussing *In re N.G.*, 577 S.W.3d at 235). The supreme court "reasoned the collateral consequences of failing to review such a finding on appeal could affect a future termination proceeding under subsection (M), thus creating a 'risk of error' sufficient to outweigh the state's interest in protecting children." *In re M.N.R.*, 719 S.W.3d at 654 (discussing *In re N.G.*, 577 S.W.3d at 234, 236-37). The supreme court concluded that "[a]llowing section 161.001(b)(1)(D) or (E) findings to go unreviewed on appeal when the parent has presented the issue to the court" violated the parent's "due process and due course of law rights." *In re N.G.*, 719 S.W.3d at 237.

This court, however, has distinguished the supreme court's holding in *In re N.G.* when an appellant, like Lauren D. in this appeal, does not challenge the sufficiency of the evidence of both endangerment findings. *See In re M.N.R.*, 719 S.W.3d at 656. In *In re M.N.R.*, the appellant challenged the sufficiency of the evidence of one endangerment ground found by the trial court but did not challenge the other endangerment ground. This court explained that when the appellant "challenges one endangerment finding without challenging the other," she was "equally at risk to future termination under subsection (M), irrespective of whether [this court] review[ed] her challenge to subsection (D)." *Id*. This court noted that "[o]ther courts presented with the same circumstances—where there are no collateral consequences implicated by appellate review of an endangerment ground due to a failure to challenge the ground on appeal—have held *In re N.G.* does not compel review of the challenged ground." *In re M.N.R.*, 719 S.W.3d at 656; *see In re A.A.*, No. 10-24-00084-CV, 2024 WL 3717427, at *1 (Tex. App.—Waco Aug. 8, 2024, pet. denied) (explaining that although it is generally "required to address the sufficiency of the evidence as to subsection (D) or (E) due to potential collateral consequences in the future," it need to address

the appellant's sufficiency argument as to subsection (D) "because the unchallenged ground pursuant to subsection (E) satisfies this requirement"); *C.W. v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-19-000654-CV, 2020 WL 828673, at *2 (Tex. App.—Austin Feb. 20, 2020, no pet.) (holding that it did not need to address challenged subsection (D) finding "because the potential collateral consequences are triggered separately by the subsection (E) portion of the trial court's judgment, which [the appellant did] not challenge"); *In re R.S.*, No. 01-20-00126-CV, 2020 WL 4289978, at *6 (Tex. App.—Houston [1st Dist.] July 28, 2020, no pet.) (same). Thus, in *In re M.N.R.*, 719 S.W.3d at 656, we held that an appellant waives any error to its challenged endangerment finding if she fails to also challenge the other endangerment finding.

Applying the holding in *In re M.N.R.* to the facts here, while Lauren D. has challenged the sufficiency of the evidence to support the trial court's subsection (D) finding, she has not challenged the sufficiency of the evidence to support the trial court's subsection (E) finding. Accordingly, any potential collateral consequences are triggered separately by the trial court's unchallenged subsection (E) finding. *See C.W.*, 2020 WL 828673, at *2. Therefore, we hold Lauren D. has waived any error as to the trial court's subsection (D). *See In re M.N.R.*, 719 S.W.3d at 656.

## CONCLUSION

For the reasons stated above, we modify the trial court's order terminating Lauren D.'s parental rights to include the trial court's findings under subsections (f) and (g). As modified, we affirm the trial court's order terminating Lauren D.'s parental rights.

Adrian A. Spears II, Justice

- 18 -